In the Matter of NEW YORK COMPENSATION RATING BOARD, Its Members, Individually and as an Association, and Its Subscribers, Petitioners, against SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Respondent.

Third Department, July 13, 1959.

*Hodges, Reavis, McGrath & Downey (John P. McGrath* and *Denis B. Sullivan* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz* and *Paxton Blair* of counsel), for respondent.

*Joseph Dean Edwards (Mahlon Z. Eubank* of counsel), for Commerce and Industry Association of New York, Inc., *amicus curiæ.*

BERGAN, J. P. Petitioner New York Compensation Rating Board is a rating organization licensed by the Superintendent of Insurance (Insurance Law, § 181) and existing for the purpose of formulating rates to be used by more than one authorized insurer (§ 180, subd. 4; cf. *Matter of National Bureau of Cas. Underwriters* v. *Superintendent of Ins.,* 6 A D 2d 73, 75).

The rate-making function of such an organization and the effect of rates promulgated by it are closely regulated by the statute. (Insurance Law, art. VIII.) Approval of the superintendent is required before such promulgated rates become effective and he may order them withdrawn if excessive, inadequate, discriminatory, " or otherwise unreasonable " (§ 184, subd. 6).

On June 27, 1957 petitioner filed with the superintendent a schedule of rates for workmen's compensation insurance in New York to become effective July 1, 1957. The superintendent approved the rates as filed and thus permitted them to become operative; but questioned " the propriety of including the loss experience " of the State Insurance Fund, a publicly created and managed compensation carrier (Workmen's Compensation Law, § 76 *et seq.*). The State Fund is required to take risks on a broader scale than any private carrier, but it is a member of the organization which maintains the petitioner Rating Board, and for some years, but not always, its experience has been included in the rating calculations of petitioner in rates approved by the superintendent.

In noting his reservations about the inclusion of the State Fund experience in the rates, the superintendent advised the petitioner that he would call a hearing on the subject and a hearing officer held a series of sessions in November and December, 1957 at which testimony was taken.

The superintendent determined that the loss experience of the State Fund " has been consistently poorer " than the average of private carriers and therefore is not similar to " the experience of the other carriers "; and that its inclusion " inflates the rates applicable to private carriers ". There is substantial evidence in the record to support these conclusions.

The superintendent's decision noted that " the fundamental difference " between the " overall or combined experience " of the State Fund and the " other carriers " may be accounted for " in the unique manner in which the Fund does business ". By " unique manner " he meant that it " is required to underwrite all risks tendered ". The decision of the superintendent, read in entity, however, suggests that he felt it unnecessary to find precisely why the State Fund's experience is poorer than the average. He found, and had adequate ground to find, that its experience is poorer; and that the State Fund operation differs in essential respects from that of private carriers. The testimony of the actuary of the Insurance Department sufficiently demonstrated the difference. It is reasonable to think that the difference is due in some measure to the statutory compulsion

of the Fund to take all risks, even though the poorer risks seem to be specially graded by the Fund to preserve equilibrium.

In express reliance on subdivision 2 of section 186 of the statute, the superintendent directed that not later than 60 days after May 15, 1958 " the rates * * * shall be adjusted to reflect the exclusion of the loss experience of the State Insurance Fund from the experience on which they are based for overall rate level purposes ". This proceeding in pursuance of article 78 of the Civil Practice Act challenges the authority of the Superintendent to make that direction.

If the power to direct the adjustment exists, it seems clear to us that it was exercised fairly and on a proper record. There was adequate proof on the hearing that the State Fund has a poorer loss experience than the average of private carriers and that it reasonably ought not to be bulked together with them in weighing into consideration rates based on loss experience generally.

This is amply demonstrated by the expression of expert opinion taken before the examiner; and hence in the record made, as well as in the procedure followed, this case is at once distinguishable from *Matter of National Bureau of Cas. Underwriters* v. *Superintendent of Ins.* (6 A D 2d 73, *supra*).

Even without expert advice, it would be manifest that a private insurance carrier having a better loss experience due to a higher selectivity of risks would be getting something of a bonus if it could base its rates in part on the loss experience of a public insurance carrier which had a more limited right of selectivity and a poorer loss experience.

We are of opinion, moreover, that the power of the superintendent to direct, as he did here, that the " rates * * * shall be adjusted " exists in the statutory frame within which the direction was made. Subdivision 2 of section 186 provides that whenever the superintendent shall determine after a hearing that the rates filed " on any class of risks are excessive * * * or unreasonable, he shall order that such rates be appropriately adjusted ". This is what he found; and this is the order he made.

Petitioner in effect argues that this power to direct adjustment must only be exercised in relation to a particular class of risk because of some excessiveness or inadequacy in the rate for that class; not to all classes in their totality (here some 700); and that the power given by the Legislature was not intended to reflect the effect of a generalized experience, such as that of one carrier experiencing greater loss ratios than the others.

Whatever the vagaries of legislative history may have been, the language of the enactment in direct context makes admissible something more in the way of adjustment than the more realignment of a single class or a small number of classes of risk. Section 186 itself is headed generally: " Discriminatory, inadequate or excessive rates; hearings "; its first subdivision is addressed broadly to " the making or ＊ ＊ ＊ application of rates ＊ ＊ ＊ by any rating organization ".

The second subdivision in which the direction for adjustment of " any class of risk " is found is closely integrated with the general purposes of the whole section, because in immediate context, the next sentence states that for the purpose " of applying the provisions of this section " (not merely of that subdivision) the superintendent may approve classifications of risk " for any or all of such classes ".

Therefore "discrimination in rates " under subdivision 1; and a direction that rates on classes of risks " be appropriately adjusted " and " approval of reasonable classifications of risk ", both under subdivision 2, all are related in statutory scheme and administrative implementation to the general legislative policy expressed in the whole of section 186, to avoid discriminatory, inadequate or excessive rates.

The phrase " any class of risks " as it appears in this contextual setting ought not to be torn out in order to be read as giving the superintendent only a pin-pointed power to adjust one class of risk with another; but as authorizing an adjustment of all classes together when a proper case of totally resulting excessive or unreasonable rates is made out.

Even if the statutory language might be read narrowly to require an *ad hoc* consideration of each classification, the superintendent could do this by a total examination of each class, one by one, and the petitioner would have the burden, under familiar rules governing administrative review, of demonstrating the superintendent did not give such a detailed consideration to the classes of risk affected by his order. No such burden has been met on this record.

Moreover, if there is deemed to be a *pro tanto* application of the superintendent's inclusive formula to all classes of risk, such a formula would embrace the terms " appropriately adjusted ", as the statute employs that term in relationship to " any class of risk ". This is not " rate making ", but it is supervision in an area, somewhat similar to over-all excessiveness, inadequacy, or unreasonableness, where supervision is indicated in the statutory purpose.

If the problem presented by this proceeding is looked at in another aspect, it seems clear that the superintendent could have ordered the filing withdrawn and stated, as he has now stated, as his reason for rejection, that the inclusion of State Fund experience brought about excessive rates. He would thus have come literally within the rule announced in *Matter of National Bureau of Underwriters* v. *Superintendent of Ins.* (6 A D 2d 73, *supra*). The order of his proceeding here was to allow the lower rate to become effective, but to investigate whether even if lower, it was low enough. His ultimate finding that it was not low enough is fully justified on this record.

The determination should be confirmed, with $50 costs.

Coon, Gibson, Herlihy and Reynolds, JJ., concur.

Determination confirmed, with $50 costs.